John W. YOUNG, Commissioner Kentucky Department of Labor, et al., Appellants,

v.

Edward MARSILLETT et al., Appellees.

Court of Appeals of Kentucky.

Oct. 8, 1971.

Rehearing Denied Dec. 17, 1971.

———◆———

Martin Glazer, James F. Perkins, Department of Labor, Frankfort, for appellants.

Perry & Greene, Paintsville, Fred G. Francis, Prestonsburg, J. Keller Whitaker, Workmen's Compensation Board, Frankfort, for appellee.

OSBORNE, Judge.

This is an appeal by the Special Fund from an award of the Workmen's Compensation Board in which the claimant Marsillett was adjudged to be totally and permanently disabled and awarded maximum benefits, all to be paid by the Special Fund. The circuit court affirmed the Board and from this order the Special Fund appeals to this court.

Marsillett filed his claim before the Workmen's Compensation Board in April 1969 seeking total and permanent disability benefits as the result of an occupational disease, pneumoconiosis/silicosis, alleged to have resulted from his employment as a coal miner. Upon the hearing, four doctors testified. Their testimony is summarized as follows:

Dr. Richard O'Neill stated that Marsillett was a cigarette smoker and that cigarette smoking is probably the leading cause of bronchitis; that an examination revealed there was no cyanosis nor digital clubbing in the patient; that his diagnosis was the patient was suffering from coal worker's pneumoconiosis, simple stage one; that his diagnosis was made from X-rays in conjunction with work exposure history; that if he were giving the patient a pre-employment physical he would not pass him to work again in the coal mines, and that part of his disability most likely is attributable to his work in the mines. The doctor was asked, "Is it possible that all his disability is the result of his work in the mines?" · His answer was, "No, sir, I would have to take into consideration that this man did smoke." This witness did not give an estimate of disability either functional or occupational. ·

The next medical expert called was Dr. Frank Varney. Dr. Varney testified that Marsillett's blood pressure was normal; his chest was normal in size and shape; that there was a prolonged expiratory phase of respiration and on "ascultation" (sic) there was scattered ronchi throughout, and that the chest X-ray revealed discrete nodular densities scattered throughout both lung fields with rather pronounced hilar lymph adenopathy. His diagnosis was that Marsillett was suffering from silicosis, second stage, and that he should not return to his occupation as a coal miner. This doctor was a general practitioner at Stone, Kentucky, and did not specialize in diseases of the chest. The X-rays he studied were of the flat film type. This doctor was not asked and did not give an estimate of Marsillett's disability either functional or occupational.

The next witness called was Dr. Boyce Jones. Dr. Jones holds a fellowship in the American College of Chest Physicians. He practices in London, Kentucky. He testified that he examined Marsillett on September 23, 1969; that at the time the patient was complaining of a cough and a wheeze and exertional activities caused shortness of breath accompanied by some chest pain and night smothering. By the use of X-ray he determined that there was some hilar calcification with nodular fibrosis throughout the lung field. He diagnosed the patient as having silicosis, grade two, and the patient should never be allowed to return to a dusty environment or any environment containing bronchial irritants. He further testified that silicosis is a progressive disease.

The final medical witness to testify was Dr. Ilona D. Scott. Dr. Scott is a graduate of the University of Vienna and is licensed to practice medicine in West Virginia, Tennessee and Georgia. She was not licensed to practice medicine in Kentucky. She testified that she examined Marsillett on July 17, 1969, and that the patient was suffering from pneumoconiosis. It was developed over a long period of time in the mines. She also testified that the patient had emphysema which was secondary to his silicosis. This doctor did not evaluate the patient's disability in terms of occupational or functional.

At the time of the hearing which was July 1969 claimant had not worked in the mines for over two years and had during this period of time been employed by the Kentucky Appalachian Industries in Prestonburg, Kentucky, at a salary of $1.70 per hour or $68.00 per week. This exceeded the maximum amount that he had earned while in the mines, it being $60.00 per week. Upon the foregoing evidence the Workmen's Compensation Board awarded total permanent disability. This was affirmed by the circuit court.

■ The Special Fund now claims that the judgment should be reversed as the award of total permanent disability should not be allowed to stand in view of the fact that the claimant is employed full time at a salary greater than that earned by him while working as a coal miner. In support of this contention they cite Young v. Shepherd, Ky., 451 S.W.2d 608. We do not believe that case to be controlling here. In Shepherd we called attention to the fact that it didn't apply to a situation such as the one now before us. There we stated:

"In those instances where the affected employee continues to work in his occupational classification or his situation concerning the effect of his occupational classification, or perhaps classifications, as related to the particular disease, is different, the result could well be a finding of no compensable disability or partial disability. That, however, is not the case here and we will leave the determination of those problems to cases which properly present them."

A study of our past decisions indicates that we have not passed on the specific question before us, viz., can one who is disabled to continue in his regular employment because of an occupational disease and who finds other employment paying as much or more than his regular employment recover Workmen's Compensation benefits? It would appear some light might be thrown on the situation by Princess Mfg. Co. v. Jarrell, Ky., 465 S.W.2d 45. There the employee suffered an allergic reaction to cotton fibers in the garment factory where she worked. The reaction was so bad she had to quit her job. We reversed an open-end award for the reason it was based upon lack of evidence rather than substantive proof. It was our view the employee could more than likely find other employment where she would be free of those elements causing the reaction. Implied in our opinion is the idea that should she find such employment and the allergic reaction subside, the award would be curtailed or ended. If the logic of that opinion were applied to the facts before us, it would seem that where a miner suf-

fering from pneumoconiosis/silicosis finds outside work and his lung infection clears up and becomes nondisabling, then he should cease to draw disability if his earnings are substantially the same as they were in the mines. However, there is a basic difference in the two cases. In the case of the allergy victim the entire disease will disappear when the source of the irritation is removed. Whereas, in the case of the victim of pneumoconiosis/silicosis, the disease is progressive.

After all factors are considered, we do not see how a just result can be reached in the type of case before us without applying a rule comparable to that set out in Osborne v. Johnson, Ky., 432 S.W.2d 800. This would be for the Board to take into consideration the present employment and future employment prospects of the employee in fixing the percentage of disability.

In view of the fact that Marsillett was employed full time at a salary greater than that earned in the mines, we believe the award of total permanent disability was not justified. For that reason the case will have to be remanded to the Board for reevaluation of the percentage of disability taking into consideration the fact that claimant is working full time at a salary commensurate to that earned in the mines and we would again reiterate what was said in the Jarrell case, supra. The award must be based upon proof in the record and can not be founded on the absence of proof.

There is another question in this case presented by the fact that at the time the proof was taken and submitted, Marsillett was working. However, prior to the filing of his briefs with the Board, his employment was terminated. The record does not reveal for what reason. This fact was placed before the Board in the form of his brief and the Board accepted the fact even though it did not appear in the record. This was certainly improper. The Board must determine cases before it upon the basis of the evidence in the record. Facts injected dehors the record in briefs of counsel may not be considered as evidence for any purpose. Odley v. Wilson, 309 Ky. 507, 218 S.W.2d 17. Also, see Woolery v. Smith, 307 Ky. 86, 209 S.W.2d 841.

Judgment reversed.

All concur.